# UNITED STATES COURT OF APPEAL
# FOR THE NINTH CIRCUIT

———————

No. 14-56907

———————

Physicians for Integrity in Medical Research, Inc.
Plaintiff-Appellant
v.
Margaret Hamburg
Commissioner, Food and Drug Administration
Defendant-Appellee

On Appeal from the Order of
United States District Court for
The Central District of California
Case No. CV 14-755-JAK-(FFMx)
Honorable John A. Kronstadt

———————————

## Appellant's Opening Brief

———————————

Steve Gupta
2258 Foothill Blvd. Suite 100
La Canada, CA 91011
Phone (818) 249-7200
Fax (818) 249-7210
Email: steve@doctorgupta.com

Attorney for Plaintiff-Appellant

## FRAP 26.1 Corporate Disclosure Statement

The plaintiff Physicians for Integrity in Medical Research, Inc., has no parent corporation. No other corporation holds stock in Physicians for Integrity in Medical Research, Inc.

Table of Contents

Jurisdictional Statement.............................................................. 1

Timeliness of Appeal................................................................... 1

Statement of Issues Presented for Review............................................. 1

Standard of Review...................................................................... 2

Introduction............................................................................. 2

Statement of Facts....................................................................... 5

Summary of Arguments................................................................. 10

Arguments............................................................................... 16

 Association Standing.................................................................. 16

 Dr. Desai's Standing.................................................................. 17

 (I) Injury-in-Fact.................................................................... 18

  Even a minute injury is enough injury for standing..................... 19

  Case Law that recognized injury-in-fact................................... 21

  Case Law that denied injury-in-fact........................................ 24

  Case Law that is referred to by the FDA................................... 27

  District Court's interpretation of case-law is flawed.................... 29

 (II) The injury is fairly traceable to FDA's actions.............................. 30

  Case law where injuries were "fairly traceable".......................... 32

  Case law where injuries were not "fairly traceable."..................... 35

  Case law referred to by the FDA ........................................... 37

 (III) Redressability................................................................. 38

The district court ordered should be reversed....................................... 38

The Appellate Court decision in *PIMR—I* was wrong........................... 39

   (a) Loss of time is an injury.................................................... 40

   (b) The ruling was against the existing case-law................................ 40

   (c) The Appellate Court in *PIMR—I* failed to see the big picture....... 42

      (1) Subject Matter of Litigation......................................... 42

      (2) Congressional Intent................................................ 43

      (3) Need of Judicial Review of Agency Actions............................. 45

         (i) Change in Indication of use was only cosmetic.................... 47

         (ii) Report of Suicides in the drug group was ignored.............. 49

*PIMR—I* is not a precedent here because the facts are different........... 51

Conclusion and Relief Requested............................................. 51

Certificate of Compliance........................................................ 53

Oral Arguments................................................................... 53

Request for Publication........................................................... 53

Statement of Related Cases...................................................... 53

Certificate of Service............................................................. 54

# TABLE OF AUTHORITIES

## Cases

*Animal Legal Defense Fund, Inc. v. Glickman* 154 F.3d 426 (1998)     22,33,39 41

*Clapper v Amnesty International* 133 S.Ct. 1138 (2013)     24,25,35 36,40,41 45,

*Coalition for Mercury-Free Drugs v. Sebelius,* 725 F.Supp.2d 1, 16 (D.D.C. 2010).     19,28

*Diamond v Charles* 476 U.S. 54 (1986)     26,27

*Hollingsworth v. Perry* 570 U.S. ____, 133 S.Ct. 2652 (2013)     25

*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).     17

*In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999)     2

*Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 (9th Cir. 2011)     2

*Friends of Earth, Inc. v. Laidlaw Environmental Services (toc), Inc.* 528 U.S. 167 (2000)     12,13,21 28,29,32

*Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560-561 (1992)     18

*Mortensen v. County of Sacramento*, 368 F.3d 1082, 1086 (9th Cir. 2004)     2

*Natural Resources Defense Council, Inc. v. United States FDA* 710 F.3d 71; 2013 U.S. App. LEXIS 5326 (2nd Cir. 2013)     32,33

*Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008)     2

*Rempfer v. Sharfstein* 583 F.3d 860 (D.C. Cir. 2009).                26

*San Luis & Delta-Mendota Water Auth. v. United States*, 672          2
F.3d 676, 699 (9th Cir. 2012)

*Seattle Audubon Society v. Espy,* 998 F.2d 699 (9th Cir. 1993)       23,39

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)      25,27,37

*United States v. Students Challenging Regulatory Agency*             19,20,23
*Procedures (SCRAP)* 412 US 669, 93 S. Ct. 2405, 37 L. Ed. 2d         34,41
(1973)

*Valley Forge Christian College v. Americans United for*             20,30,42
*Separation of Church and State, Inc.* 454 U.S. 464; 102 S.Ct         43,
752 (1982)

## Statutes and Regulations

21 U.S.C. §§ 301-399                                                  5

21 U.S.C. § 355(d)                                                    5,6,49

28 U.S.C. § 1291                                                      1

28 U.S.C. § 1331                                                      1

21 C.F.R. 10.30                                                       7,17

21 C.F.R. §10.45                                                      17

## Other

*FDA Science and Mission at Risk:* Report of Subcommittee on Science and
Technology, November 2007.                                            44

## Jurisdictional Statement

The defendant is a federal agency therefore the federal courts have jurisdiction under 28 U.S.C. § 1331. The plaintiff is a resident of Los Angeles County. The case was filed in the District Court for the Central District of California. The Ninth Circuit has jurisdiction pursuant to 28 U.S.C. § 1291.

## Timeliness of Appeal

This appeal is from an order of the District Court. The District Court granted the defendant's motion to dismiss the case for lack of subject matter jurisdiction. The order was entered on October 23, 2014. The plaintiff filed this appeal on December 5, 2014. The appeal was filed within 60 days of the final determination as required by FRAP 4(a)(1)(B).

## Statement of Issues Presented for Review

Does the Plaintiff-Appellant (PIMR) have standing? PIMR claims organizational standing on the basis of injury to one of its directors.

## Standard of Review

The District Court's determination as to whether a party has standing is reviewed *de novo*. See *San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676, 699 (9th Cir. 2012); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 (9th Cir. 2011); *Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008) (noting questions of standing reviewed de novo, but underlying factual findings reviewed for clear error); *Mortensen v. County of Sacramento*, 368 F.3d 1082, 1086 (9th Cir. 2004); but see *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999) (noting whether individual has standing to appeal is a question of fact reviewed for clear error).

## Introduction

Plaintiff-Appellant, Physicians for Integrity in Medical Research, Inc. (PIMR), is a non-profit, 501 (C), public benefit organization. The objective of PIMR is to stress integrity and honesty in medical research, to educate the public and the government about bias in medical research, and to protect the interests of patients.

Defendant-Appellee, Margaret Hamburg is the Commissioner of the Food and Drug Administration (FDA). The FDA is required to approve only those new drugs that are both safe and effective.

Chronic Obstructive Pulmonary Disease (COPD) is a common medical condition. Patients suffer from cough, sputum, and shortness of breath. From time to time these patients' symptoms worsen. The exacerbation can be moderate or severe. Moderate exacerbations are treated with antibiotics and a ten to fourteen day course of oral steroids. Severe exacerbations require hospitalization.

A pharmaceutical company applied to the FDA for approval of a new drug called roflumilast (Daliresp®) for the treatment of COPD. Three FDA staff scientists analyzed the clinical data submitted by the drug company and could not reach a consensus. Two of the three scientists concluded that the drug was neither safe nor effective. The FDA convened a scientific advisory committee and presented the data to the committee. The committee recommended against approving the drug and the FDA rejected the new drug application. A few months later, without any new evidence or scientific basis, the FDA approved the drug. **PIMR believes that the reversal by the FDA was both contrary to established rules and regulations and harmful to the public**. PIMR petitioned the FDA to withdraw its approval. The FDA rejected the petition. PIMR requested that the FDA reconsider its decision and the FDA again rejected the petition after reconsideration.

3

PIMR initially filed a lawsuit in the Appellate Court of the Ninth Circuit to obtain judicial review of the FDA's action. The court ruled that in the absence of a specific statute the Appellate Court had no jurisdiction. The court ruled that the venue was improper and dismissed the suit without prejudice. PIMR then filed the present lawsuit in the District Court.

The FDA filed a motion to dismiss for lack of standing of the plaintiff. PIMR is claiming standing since one director of PIMR has suffered injuries from the FDA's actions. The District Court granted the motion and the suit was dismissed for lack of subject matter jurisdiction. PIMR appealed to this court.

A similar case was decided by the Ninth Circuit Court of Appeal on February 24, 2014, *Physicians for Integrity in Med. Research, Inc. v. Hamburg*, No. 12-56119, 2014 WL 690188, (9th Cir. 2014)(unpublished). ("*PIMR—I")*. That case addressed the FDA's approval of a medical/surgical device called Alair®. Believing that the device was unsafe, PIMR filed a petition asking the FDA to withdraw its approval. The FDA rejected the petition and PIMR filed a lawsuit in District Court. The District Court dismissed the action for lack of standing. PIMR appealed to the Appellate Court of the Ninth Circuit. The court affirmed the District Court ruling.

PIMR believes that the ruling in *PIMR—I* was wrong and should be overturned.

There is one important difference between *PIMR—I* and the present case. The injured physician in *PIMR—I* suffered loss of time. He had fee-for-service patients. He did not claim to have any HMO patients. In fee-for-service the fee is set by another government agency. The Appellate Court ruled that the other agency was responsible for the loss to the physician. In the present case the physician claimed loss of time for both fee-for-service and HMO patients. There is no other government agency involved in the HMO fee structure.

## Statement of Facts

A pharmaceutical company submitted a new drug application (NDA) to the FDA for approval of roflumilast for the treatment of COPD. As per the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-399, the FDA is required to approve the drug for interstate commerce only if it is found to be safe and effective for use under the conditions prescribed. 21 U.S.C. § 355(d).

The results of the clinical studies were analyzed by three FDA physicians, Drs. Anthony Durmowicz, Xuemeng Sarro, and Badrul Chaudhury. Dr. Durmowicz summarized the lack of clinical benefit, "... for

5

an individual COPD patient treated with roflumilast, it would potentially take five years of therapy to get benefit of not having to receive one 10-15 day course of corticosteroids." (ER Page 70¶4)

     The FDA convened a Pulmonary-Allergy Drugs Advisory Committee meeting on April 7, 2010 to evaluate the clinical data. The committee members noted that, "Benefits are meager, benefit does not outweigh the safety profile of the drug.." (ER 72¶1). The committee was asked if the, "drug should be approved on basis of its risk/benefit analysis?" The committee members said no by a two to one margin (ER 71¶6). The FDA rejected the NDA on May 17, 2010 (ER 80¶5). The FDA is required to reject the NDA if, "...there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested..." 21 U.S.C. §355(d).

     On February 28, 2011 the FDA approved the NDA. **What happened between May 2010 and February 2011 is the subject matter of this litigation.**

     21 U.S.C. §355(d) has a specific provision concerning situations where a NDA is initially rejected but then is reconsidered for approval. The FDA may approve the NDA if data shows that the condition resulting in the rejection no longer exists. Substantial evidence is defined as,

6

"evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof."

PIMR filed a petition with the FDA to withdraw the approval given to the NDA under 21 C.F.R. 10.30 in October 2011 (ER 67). PIMR argued that the benefit of the drug was meager and that there was an increase in risk for cancer, intractable diarrhea, weight loss, and suicide in the control group as opposed to the placebo group.

The FDA rejected the petition. (ER 74) In its rejection letter the FDA said there were sufficient changes for approving the drug.

- Benefits of Drug: The indication (guidelines) for prescribing roflumilast was rewritten to, "treatment to reduce the risk of COPD exacerbations in patients with severe COPD associated with chronic bronchitis and a history of exacerbations." The FDA claimed that this new indication was different and more limited than the previous indication that was presented to the advisory committee, i.e. "..Maintenance treatment of COPD associated with chronic bronchitis in patients at risk of exacerbations".

7

- Risks of Drug: SAE (Serious Adverse Events) were dealt with in the following manner. The risks of intractable diarrhea, weight loss, cancer, and suicides were listed in the prescribing information. There were three suicides and two attempted suicides in the drug group and none in the placebo group. The pharmaceutical company was asked to analyze the data and submit a report. The company concluded that there was no statistical difference between the two groups. The FDA accepted the conclusions of the company.

PIMR filed an application for reconsideration. (ER 83) PIMR pointed out that the guideline or indication change was cosmetic. Patients will still have to take the drug every day for the rest of their lives for the "prevention of exacerbation." That is same as "maintenance." The FDA rejected the application for reconsideration. (ER 88)

PIMR filed a petition in the Appellate Court of the Ninth Circuit for judicial review of the agency action. The FDA filed a motion for dismissal. The court ruled that the venue was improper since there was no specific statute for direct Appellate Court review. The court granted the FDA motion to dismiss, without prejudice.

PIMR filed the present lawsuit in the District Court on January 31st, 2014. PIMR alleges that actions of the FDA were arbitrary and capricious and filed amended complaint (FAC) on May 23, 2014. (ER 55)

The FDA filed a motion to dismiss for lack of subject matter jurisdiction on June 6, 2014.(ER 39) The FDA alleged that PIMR lacked standing since there was no injury-in-fact and if there was an injury it was not "fairly traceable" to the FDA's actions. The FDA further argued that under issue preclusion PIMR is barred from relitigating the standing. The FDA claimed *PIMR—I* had the same fact pattern.

PIMR, in its response to the motion to dismiss, claimed association standing because of injury to its director Dr. Nilesh Desai. (ER 18) PIMR referred to an affidavit from Dr. Desai (ER 37) stating that he suffered loss of time, income, and prestige because the FDA approved a drug that is neither safe nor effective. Dr. Desai has to explain to his COPD patients that the new drug is not safe, why it is not safe, and why he would not recommend it. This results in loss of time and thereby money. His professional prestige also suffers because he is contradicting a government agency that has a lot of credibility with the public.

The District Court ruled that PIMR lacked standing and dismissed the case on October 23, 2014. (ER 1)

9

## Summary of Arguments

PIMR claims association standing because one of its founding members/directors (Dr. Desai) was injured by illegal acts of the FDA. An association may claim standing if any of its members is injured, the participation of the member is not required in the proceedings and if the interests at stake are germane to the organization's purpose.

Dr. Desai claimed in his affidavit that he had to spend unnecessary time with his patients explaining that the drug roflumilast is neither safe nor effective. He lost time that he could have used to see additional patients and therefore he suffered loss of income. When a patient comes to him he must outline all the available alternatives, just like an attorney must explain all available options to his client. This is a fiduciary duty and not a self-inflicted injury.

The patients of Dr. Desai either have fee-for-service insurance or Medicare, or they are HMO members. He cannot get reimbursed for this extra time through either payment system. The physician's fee schedule is over a thousand page long, single spaced document prepared by the Center for Medicare Services (CMS), a government agency. Dr. Desai has no power to change that. Medicare and most private insurance companies follow the CMS physician's fee schedule. With HMO patients, a doctor is paid a fixed

10

amount per month per patient, regardless of how much time he spends with an individual patient. The fee for HMO patients is determined by the insurance company depending upon market conditions. Dr. Desai has no capacity to significantly influence that fee. Physicians are prohibited by law to negotiate fees as a group with the insurance companies either for fee-for-service or HMO patients.

In addition, PIMR believes that the loss of time is an "injury," even without assigning it a dollar amount. Time has an intrinsic value. You can spend time with your family or in pursuit of a favorite activity. The FDA's argument that injury has to be calculated in dollars to be "concrete" is misplaced. Just like watching birds or enjoying a painting has an aesthetic value, spending leisure time has an inherent value.

PIMR contends that the injury is fairly traceable to the FDA's actions. The FDA approved the drug in spite of scientific findings showing its lack of effectiveness. The drug is heavily promoted directly to the patients through TV and print advertisements. As a result doctors are forced to waste time advising patients against the use of this medicine.

Since COPD is a common medical condition, Dr. Desai is sure to see more COPD patients in the future and will continue to suffer injury as a

11

result. This is a certainty. This injury is redressable by a favorable ruling from the court.

PIMR contends that *Laidlaw*, infra, should be the controlling case in this instance. There are striking similarities between *Laidlaw* and the present case. Congress enacted laws to give citizens the power to monitor the enforcement of environmental regulations. Similarly Congress gave citizens a say in FDA actions. In both instances, Congress saw a role for judicial process for the redress of grievances. CFR specifically allows for judicial review of FDA actions if the FDA rejects a citizen's petition to the FDA.

In *Laidlaw,* and in the present case, there is close cooperation and **collusion between the industry and the agency** that is supposed to regulate the industry. In *Laidlaw,* the polluting company filed a lawsuit against itself after getting the agency officer to sign the complaint papers. This was done to prevent the citizen's lawsuit from going forwards. If the court had denied standing to the plaintiffs in *Laidlaw* the collusion would never have come to light.

In the present case the FDA colluded with the pharmaceutical company. The FDA approves a drug for treatment for a certain disease under certain specific conditions. The written guidelines for this use are

12

called an indication. The first indication proposed by the drug company was rejected by the FDA staff scientists as well as its own Advisory Committee. The drug company made cosmetic changes in the wording of the indication and resubmitted the revised indication. No additional studies were conducted.

Further evidence of the collusion between the FDA and the drug company is evident in the way the adverse effects of the drugs were handled. There were three suicides and two attempted suicides in the drug group as opposed to none in the placebo group. The FDA supervisor **asked the pharmaceutical company** to reanalyze the data instead of asking the FDA statistician to do so or requiring an independent analysis. The drug company said that on reanalysis they found that there was no increased risk of suicide and this response was taken at face value by the FDA.

The district court order should be reversed. The court ruled that income lost as a result of talking to a patient does not constitute injury. How much injury is sufficient injury is a matter of opinion. There are no hard and fast rules. The amount of injury in *Laidlaw* and several other cases was far less particularized or concrete than in the present case, even then, the Supreme Court granted them standing.

The District Court also stated that the extra time spent was not fairly traceable to the FDA actions. In this ruling the District Court followed the Appellate Court order in *PIMR—I*.

The Appellate Court in *PIMR—I* erred in ruling that the injury was not fairly traceable to the FDA because of third party involvement. The court said that even if the FDA's approval did result in a waste of time, because a different federal agency sets the reimbursement rates for physicians, the loss of income is not fairly traceable to the FDA. The court's ruling is contrary to case-law. The Supreme Court has granted standing to plaintiffs in several cases where third parties played a far bigger role than in the present case.

PIMR also contends that loss of time is an "injury". There is no need to prove that loss of time resulted in loss of money. One can spend time in his/her favorite activity and therefore it has an inherent value. The Supreme Court has ruled that watching birds has aesthetic value. The loss of this aesthetic value is a cognizable injury. Similarly loss of time is an injury.

In *PIMR—I*, **the Appellate Court failed to see the whole picture.** The standing requirement cannot be judged without looking at the whole case – in particular, these three factors are most important:

14

Subject Matter of the lawsuit, Congressional Intent and Need of Judicial
Review of agency actions

The Supreme Court almost always discusses the factual details of the
case before proceeding to the standing issue. The Supreme Court wrote that
the Court does not usually grant standing to plaintiffs in matters involving
national security, intelligence, and foreign policy. It implies that the Court
changes its standing requirements depending upon the subject matter.

The Court has always shown great respect for the intent of Congress.
Congress has recognized the need and desirability of public participation in
the proceedings of the FDA. The FDA regulates several hundred thousand
products. In some cases, members of the public are better informed than
the experts at the FDA about individual products. Congress established a
procedure whereby citizens can petition the FDA, and should the FDA
rejects the petitions; citizens can file for judicial review of the agency's
actions. PIMR filed a petition with the FDA and after the petition was
rejected PIMR requested a judicial review.

PIMR contends that if the injury to Dr. Desai is not deemed enough
injury, or if the injury is not fairly traceable to the FDA actions, then no
injury will ever be sufficient to bring the FDA under judicial review, no
matter how arbitrary, capricious or illegal its action are. During the course

15

of *PIMR—I* and in the present case, neither the FDA, nor the district courts, or the Appellate Court have come up with any scenario where the FDA's action would come under judicial review, when the FDA approves an unsafe drug.

This was never the intent of the Supreme Court when the Court formulated the Standing Doctrine. In *Clapper*, infra, The Court has gone out of its way to reassure the public that agency actions will be subjected to judicial review, even in cases involving national security and intelligence gathering.

Pharmaceutical companies sue the FDA when their petitions are denied so the FDA is very mindful of their requests. However, patients and patient advocates are ignored when the FDA, in violation of law and in collusion with the pharmaceutical companies, approves an unsafe drug.

## Arguments

### Association Standing:

PIMR is claiming standing based upon the denial of its citizen petition to the FDA and injury to one of its directors/founding members. PIMR submitted a petition to the FDA to revoke the approval given to roflumilast, as allowed under 21 C.F.R. §10.30. The petition was rejected.

16

PIMR petitioned for reconsideration. After reconsideration the FDA rejected the petition again. Under 21 C.F.R. §10.45, this gives PIMR a right to judicial review of the agency's action. PIMR is claiming standing because one of its directors was injured by the FDA's actions.

> "For an organization to have standing to bring suit on behalf of its members, it must satisfy three requirements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

> PIMR is a public benefit (501C-3) organization incorporated in

California. A founding member/director, Dr. Desai, would have standing to sue on his own. PIMR's purpose is stated in its bylaws: "To be an advocate for patients and public in the field of medical research, and introduction of new drugs and medical devices." The present lawsuit fits squarely with the stated purpose. Participation of Dr. Desai is not necessary in this lawsuit.

**Dr. Desai's Standing:**

For a party to have standing in federal court, the petitioner has the burden to prove that:

> (1) he/she has suffered an injury-in-fact, that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) the injury is fairly traceable to the challenged action of the defendant; and
(3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
 *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560-561 (1992)

**(I)    Injury-in-Fact:**

Dr. Desai is a general internal medicine practitioner, in solo practice. Since COPD is a common medical problem Dr. Desai has seen several COPD patients and had to explain to them that roflumilast is neither safe nor effective even though the FDA says it is. He tells them that, "the FDA does not require drug companies to compare the new drug, in this case roflumilast, to the drugs already available for the treatment of COPD. Roflumilast was only compared to a placebo and it was only slightly better than the placebo in one parameter. It was far worse than the placebo in its side-effects profile. Roflumilast was not compared to the existing standard drug regime so there is no way to know if it is safer or more effective. All of the clinical studies were conducted by the drug company selling the drug, so the bias in these studies cannot be ignored." This takes a lot of time for which he is not compensated. It is also a time that he cannot spend elsewhere.

Even without loss of money, the loss of time is itself an injury. Dr. Desai could spend that time with his family or in pursuit of a favorite

18

activity. Just like watching birds has an aesthetic value, spending time in your favorite pastime has an intrinsic value.

Dr. Desai said that he also loses some amount of credibility each time he contradicts the FDA, since the FDA has a high reputation among the general public. The patients are left wondering if the FDA is right or if Dr. Desai is right. There is no way to quantify this loss of credibility. It does not mean that the loss is not important or does not exist. This is not a generalized loss of credibility for all doctors as was in the case in *Coalition for Mercury-Free Drugs v. Sebelius,* 725 F.Supp.2d 1, 16 (D.D.C. 2010). The loss is specific, particular to one individual, and cannot be ignored.

The District Court said, "Desai makes no specific statements in his declaration about the amount of time he has spent talking to "several" patients about roflumilast. Nor does he quantify in any way the alleged loss in revenue that has resulted."(ER 5¶2) The basic question is how much injury is necessary to have standing?

**Even a minute injury is enough injury for standing.**

- The Supreme Court said in *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)* 412 US 669 at 690 n14, 93 S. Ct. 2405, 37 L. Ed. 2d (1973),

" "Injury in fact," reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation -- *even though small* -- from a person with a mere interest in the problem. ...... "The basic idea that comes out in numerous cases is that an *identifiable trifle is enough* for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation." Davis, Standing: Taxpayers and Others, 35 U.Chi.L.Rev. 601, 613."" (Italics added.)

In 1982, Justice Brennan reiterated the rule made in SCRAP. Writing for the dissent he said,

"it is equally clear that the Constitution draws no distinction between injuries that are large and those that are comparatively small. The line between more dollars and less is no valid constitutional measure..... The only distinction that a Constitution guaranteeing justice to all can recognize is one between *some injury and none at all*." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.* 454 U.S. 464 at 497; 102 S.Ct 752 (1982). (Italics added.)

However the plaintiffs did not claim *any injury* in that case and the standing was denied.

In view of the above, the District Court should not have insisted on a dollar amount. Loss of time caused Dr. Desai to see fewer patients and that resulted in lost income. The amount of lost income is irrelevant.

Loss of time is itself an injury. Dr. Desai could have spent that time with his family and friends. It is wrong to say that time is only valuable because one can make money during that time. If making money is the only

20

criterion then people not in gainful employment (disability or retirement) could never be injured no matter how much of their time is wasted by a defendant.

**Case Law that recognized injury-in-fact**

Another way to decide whether Dr. Desai had injury-in-fact or not is to compare his injury to injuries suffered by plaintiffs in other cases.

- *Friends of Earth, Inc. v. Laidlaw Environmental Services (toc), Inc.* 528 U.S. 167 (2000)

This case should be the **controlling case** in the present instance because it has so much in common with the present suit. Both deal with citizen action in situations where Congress has given power to citizens to file a lawsuit. In both instances there was collusion between the government agency and the industry that the agency regulates. The Supreme Court discussed the standing doctrine in detail in this case.

The Laidlaw Corporation had a waste treatment plant near a river and discharged more toxic waste then was legally allowed. Friends of Earth (FoE) sued claiming that its members would not go in or near the river because of their fear that the river water was no longer safe. The District Court weighed all the evidence and concluded that even after the discharge

21

the overall quality of the water exceeded the levels necessary to support recreation, swimming and fishing. Since there was no environmental damage the plaintiffs had no reasonable basis for their fear which was a result of their own imagination and not fact. Despite this the Supreme Court ruled that the injury was sufficient for standing. Is the loss of time, money and credibility to Dr. Desai less "concrete" and "particularized" than the injury in *Laidlaw*?

- *Animal Legal Defense Fund, Inc. v. Glickman* 154 F.3d 426 (1998)

One of the plaintiffs had an interest in observing animals under humane conditions. He regularly visited a particular zoo and saw conditions to which he objected – chimpanzees housed in isolation (causing social deprivation), adult bears placed in proximity to squirrel monkeys (frightening the latter) – and other situations he believed to be inhumane. Given his desire and plan to visit the zoo in the future, the court held that he had an "injury-in-fact." The injury was the plaintiff's own making. He could have gone to a different zoo to view the primates. Or he could have limited himself to seeing tigers, lions, and elephants. Yet he was given standing. Dr. Desai has no choice. He has to spend extra time to fulfill his obligations to his patients. His injury is not any less than the injury to the plaintiff in *Glickman*.

22

- *Seattle Audubon Society v. Espy,* 998 F.2d 699 (9th Cir. 1993).

The Audubon Society filed a case against the US Forest Service to stop logging in a forest area that was an owl habitat. The Society claimed that its members visited the forest to view the owl population. The loss of parts of the forest to logging would decrease their aesthetic pleasure. The court found that the loss of owl habitat would decrease the owl population. The plaintiff will not be able to see as many owls as they would see without logging. This was sufficient "injury-in-fact" to the plaintiff and the court gave standing.

The loss of time, income and credibility to Dr. Desai is far more concrete then the injury between seeing more or a little less number of owls.

- *U.S. v. SCRAP, 412 U.S. 669 (1973).*

Law students filed suit against a Government agency when the agency approved a fare increase in railways without adequate public hearings. The students claimed that less recyclable waste will be transported by rail because of increased costs. Less recycling would mean an increase in the consumption of disposable material. All this would result in a degradation of parks and the environment. The students argued that they used the parks on a regular basis. The railways argued that there was no reason to believe that a 2.5% increase in fare would result in less recyclables being

23

Appellant's Opening Brief

transported. The Court was of the opinion that the students had an "injury-in-fact".

The injury to Dr. Desai was far more then the injury to students from loss of enjoyment of parks, because of environmental damage from less recycling due to 2.5% in railway fare.

**Case Law that denied injury-in-fact**

- *Clapper v Amnesty International* 133 S.Ct. 1138 (2013)

A group of journalists and human right activists petitioned the Court to overturn the Foreign Intelligence Surveillance Amendment Act of 2008, as soon as the law was signed by the President. They claimed that it was imminent that they would suffer injuries if the act was implemented. The Court ruled that the journalists did not suffer any past injuries since the law was not yet implemented. The possibility of future injury was too remote to form a basis for standing. The Court was sharply divided and the minority opinion listed the reasons why the petitioners had enough injuries to give them standing. The majority opinion emphasized that the agency actions were subject to judicial review, in future, if appropriate petitioners suffered injury.

PIMR contends that *Clapper* is very supportive of giving standing to plaintiffs in the present case. Four out of nine justices gave standing to the plaintiffs in *Clapper*. The other five noted that no injury was yet done to the plaintiffs and the future injury was speculative. They also mentioned that the case involves national security and intelligence gathering, areas where the Court had rarely given standing in the past. If the *Clapper* case had been about the health and welfare of citizens, and the injury was a past injury, the *Clapper* court would have ruled for the plaintiff.

- *Hollingsworth v. Perry* 570 U.S. ____, 133 S.Ct. 2652 (2013)

California voters passed proposition Eight to ban gay marriages. The District Court declared it unconstitutional. The Attorney General of California refused to file an appeal. A group of activists appealed. The petitioners claimed no personal injury, except injury to their "interest" and "right" to defend the statue against same sex marriage because they had helped pass the referendum. The Court did not find any legal basis for their claim that they had a "right", their interest was the same as any other citizen of California. The Court ruled that generalized grievances cannot be grounds for standing. The fact pattern of this case is so different than the present case that it should not form a precedent. Dr. Desai had a personal injury when he lost time, money and credibility.

- *Rempfer v. Sharfstein* 583 F.3d 860 (D.C. Cir. 2009).

Six army personnel sued to stop the Department of Defense from making it compulsory for army personnel to receive the Anthrax vaccine. They claimed that the vaccine was ineffective or unsafe and they gave four arguments. The court dismissed the first three points on merits and the fourth point because the petitioners did not have standing to make that claim. The petitioners claimed that vaccine is supposed to be given in six shots at regular intervals. However, because of lack of supply in 2000-2002, the shots could not be given at regular intervals as recommended. The court noted that the petitioner's schedule of vaccination was not interrupted, and would not be interrupted should they get the vaccine in the future, so the lack of vaccinations from 2000 to 2002 did not affect them. Therefore they had no injury and no standing.

Dr. Desai had an injury, loss of time, money and credibility. It happened in the past and is sure to happen again in the future.

- *Diamond v Charles* 476 U.S. 54 (1986)

Illinois passed a law restricting abortions. Public interest groups filed a lawsuit and key provisions of the law were declared unconstitutional by the District Court. The Attorney General of Illinois decided not to appeal. Dr.

Diamond appealed and the question was whether he had suffered any injury in order to have standing. The Court said:

> "Diamond, who is a pediatrician, claims that if the Abortion Law were enforced, he would gain patients; fewer abortions would be performed and those that would be performed would result in more live births, because the law requires a physician to attempt to preserve the life of the aborted fetus. By implication, therefore, the pool of potential fee-paying patients would be enlarged. The possibilities that such fetuses would survive and then find their way as patients to Diamond are speculative, and "unadorned speculation will not suffice to invoke the federal judicial power." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 44 (1976).""

In the present case, Dr. Desai has claimed *past injuries* that are sure to happen again in the future. This is very different from the case of Dr. Diamond who only claimed the possibility of *future injuries*. His claim was that he might get more patients if women did not get as many abortions in future and brought their children to him. It was too speculative to deserve standing.

**Case Law referred to by the FDA**

The FDA in its motion to dismiss (ER 39) did not refer to any specific case where the injury to the plaintiff was more than the injury to Dr. Desai, and yet standing was denied. The FDA makes **conclusory statements** like, "Neither wasted time, fear of losing patients, or loss of credibility

27

establish that Dr. Desai suffered an injury in fact that is "concrete and particularized" and "actual or imminent." *Friends of the Earth*, Inc., 528 U.S. at 180." (ER 50¶2) PIMR contents that injury suffered by plaintiffs in *Friends of the Earth v Laidlaw* was less than the injuries suffered by Dr. Desai and therefore PIMR has standing.

- *Coalition for Mercury-Free Drugs v. Sebelius*, 725 F.Supp.2d 1, 16 (D.D.C. 2010)

The FDA in their Motion to Dismiss Amended Complaint (ER 50¶2) wrote,

"As the court found in PIMR I, "[m]erely being asked about [a treatment option], or thereafter deciding to spend time talking about it and/or not offer[ing] it to patients, does not constitute the sort of 'concrete and particularized' injury required under standing doctrine." PIMR I, Dkt. #24, Order Re: Motion To Dismiss Amended Complaint at 5-6 (citing *Coal. for Mercury-Free Drugs v. Sebelius,* 725 F.Supp.2d 1, 16 (D.D.C. 2010))"

This citation is **NOT TRUE**. A complete reading of *Mercury Free* as well as a Microsoft Word search of the document failed to show any such language in the court's ruling. None of the plaintiffs in *Mercury Free* claimed that they lost time and therefore money because they had to discuss the subject matter with their clients.

In *Mercury Free*, the plaintiffs asked the FDA to remove vaccines containing Thimerosal (a preservative with trace amounts of mercury) from

28

the market. The court denied them standing because the plaintiffs could not show that such injury was likely to happen in future, a requirement for injunction. The patients who claimed injury from having had the vaccine, were not going to repeat the mistake of getting such a vaccine in the future. The doctors who were against such vaccines had easy access to Thimerosal-free vaccines. The doctors claimed injury to their credibility but in this case their credibility was no different than those of all other doctors in the USA. Such generalized grievances have been rejected as basis of standing.

## District Court's interpretation of case-law is flawed

The District Court cited *Laidlaw* in its conclusion that the injury was not sufficient to impart standing to PIMR. This is an error. *Laidlaw* supports the argument that PIMR's injuries were sufficient to impart standing.

Referring to other cases cited by PIMR, the District Court said, "In each of these cases, the plaintiffs had sufficiently alleged that the government's actions would adversely affect its protected interest. In contrast, in this action, Plaintiff has not shown a *protected interest* in "not spending additional time talking to patients about newly approved

29

products.”" (Italics added) (ER 6¶1)PIMR contends that making a living is a "protected interest."

**2.    The injury is fairly traceable to FDA's actions:**

The words "fairly traceable" are not well defined. Justice Rehnquist remarked,

> "We need not mince words when we say that the concept of "Art. III standing" has not been defined with complete consistency in all of the various cases decided by this Court which have discussed it, nor when we say that this very fact is probably proof that the concept cannot be reduced to a one-sentence or one-paragraph definition." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.* 454 U.S. 464 at 475; 102 S.Ct 752 (1982)

Loss of time is not a self-inflicted injury. A doctor has a legal duty to explain to his patients the important treatment options available and the risks and benefits of each. The time involved in this discussion is dependent on the subject matter. When the FDA approves a drug for use, it is assumed that the FDA has done its legal duty to make sure the drug is safe and effective. The FDA does this by analyzing the risk/benefit ratio of the drug. When the FDA approves an unsafe drug the burden is passed on to the prescribing doctor. The doctor has to evaluate the drug's risk/benefit ratio and explain this to the patient. Dr. Desai would not be in this situation if the FDA had done its job.

Pharmaceutical companies use TV, print media, and the internet to advertise new drugs to the public. They cannot do so without FDA approval. Public awareness of the new drug makes it imperative that Dr. Desai spend valuable time educating his patients concerning the issues. This is a direct result of the FDA's actions.

Dr. Desai cannot get compensation for this extra time. He must see fewer patients to fulfill this extra duty. Therefore he loses money. (ER 64) There are two types of patients when it comes to compensation, fee-for-service and HMO. The fee for fee-for-service is set by the Center of Medicare Services (CMS), an agency of the federal government. Every year the CMS publishes the Physicians Reimbursement Schedule. It is a single spaced document over a thousand pages long. The schedule is based on multiple factors such as severity of illness, number of body systems involved, amount of office space and office personnel needed, complexity of medical decision making, and the time spent by physicians. It is impossible for solo-practitioners like Dr. Desai to change this schedule. Private insurers also follow the same schedule.

For HMO patients the insurance companies pay a fixed monthly fee. This fee is set by insurance companies depending upon market conditions. An individual practitioner has little if any leverage to affect the amount.

31

Under US anti-trust laws, individual doctors cannot get together in a union or association to negotiate fees with insurance companies or Medicare, either for fee-for-service or HMO patients. It is impossible for Dr. Desai to get compensated for the extra time that he has to spend.

**Case law where injuries were "fairly traceable"**

- *Friends of Earth, Inc. v. Laidlaw Environmental Services (toc), Inc.* 528 U.S. 167 (2000)

The defendant could argue that the plaintiffs' injuries were self-inflicted. The water in the river met all the standards for safety. It was safe to swim and fish. The plaintiffs would not go hiking on the river shore because of their own unreasonable belief that the water was polluted. The District Court had ruled that there was no environmental damage and the river was safe. However the Supreme Court ruled that it was not a self-inflicted injury.

- *Natural Resources Defense Council, Inc. v. United States FDA* 710 F.3d 71; 2013 U.S. App. LEXIS 5326 (2nd Cir. 2013)

NDRC sued the FDA when the FDA refused to issue regulations about the use of a chemical in soaps called triclosan. The FDA questioned the standing. NRDC presented an affidavit from a member of the organization

who worked in a veterinarian clinic as a nurse. She used the soap provided by her employer. The soap contained triclosan. She claimed that she "has slightly increased risk of ovarian cancer from triclosan. I am also concerned about hormone disruptive actions of triclosan." The court said,

> "At issue is whether the potential avoidability of triclosan exposure at the workplace—either by purchasing triclosan-free soap or by advocating with employers to supply triclosan-free soap—renders the exposure "self-inflicted" so as to vitiate the causal link between FDA's alleged regulatory delay and NRDC members' triclosan exposure. We hold that neither the availability of triclosan-free soap for purchase nor the possibility that NRDC members' employers might be willing to supply triclosan-free soap prevents NRDC from establishing that the triclosan exposure is fairly traceable to FDA's alleged unreasonable delay in regulating triclosan."

The FDA would have argued in the *NDRC v FDA* that the injury was due to independent actions of the employer. The employer was free to choose triclosan free soap. The employee was free to bring her own soap to work. She could ask and probably get different soap from her employer.

The injury in the present case is far more directly traceable to the FDA's actions then was the case in *NDRC v FDA*. Dr. Desai had to spend extra uncompensated time because of the actions of the FDA. The fee for fee-for-service was set by a different federal agency. There was no involvement of a third party when he saw HMO patients.

- *Animal Legal Defense Fund, Inc. v. Glickman* 154 F.3d 426 (D.C. Cir. 1998).

Plaintiff claimed injury to his esthetic interests when he saw that monkeys and chimpanzees were not properly taken care of in the zoo. He sued the agency responsible for the supervision of the primates and asked that fines be imposed on the zoo. The agency could argue that plaintiff did not have to visit that particular zoo, that he could see other zoos. Or, that he did not have to visit those particular animals but could watch the non-primate animals, like tigers, lions and elephants.

The court found that the plaintiff did not have self-inflicted injuries. He had standing to sue.

- *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)* 412 US 669, 93 S. Ct. 2405, 37 L. Ed. 2d (1973)

Law students filed suit against a government agency when the agency approved a railway fare increase of 2.5% without adequate public hearings. The students claimed that because of increased costs, less recyclable waste would be transported by rail. Less recycling would mean an increase in the consumption of disposable material. All of this would result in the degradation of parks and the environment. They claimed that they would suffer when they visited these parks.

The agency could argue that a number of third parties were responsible for the injuries. The recycler could decide to pay the extra 2.5%

in railway fares. The recycler could build local facilities to handle the waste. The public may, in fact, not increase the consumption of disposable materials. Parks and the environment could be kept pristine if people and appropriate agencies took proper care of them. In spite of these third party involvements, the Court found standing for the plaintiffs.

Dr. Desai's spending extra time is directly attributable to the FDA, the involvement of a different agency in setting the fee schedule is a minor third party involvement. In HMO patients there is no third party involvement.

**Case law where injuries were not "fairly traceable."**

- *Clapper v Amnesty International 133 S.Ct. 1138 (2013)*

A group of journalists and human right activists petitioned the Court to overturn the Foreign Intelligence Surveillance Amendment Act of 2008, as soon as the law was signed by the President. The act added section 702 to 50 U.S.C. §1881a. The Court ruled that *future injuries*, if any, were not fairly traceable to the Act. The Court said that five different conditions have to be fulfilled, in the future, for the plaintiff to suffer injury. This breaks the "fairly traceable" link of injury and causation. The five intervening events were listed by the Court as follows:

35

"(1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under §1881a rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy §1881a's many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts." *Clapper* Opinion at III A.

This is very different from the present case where one agency is causing the doctor to spend extra time with his patients and another agency is responsible for lack of compensation for that extra time, in fee-for-service patients.

In HMO patients there is no other government agency involved. The market forces determine the fees and the doctor lost precious time directly because of one agency's actions.

PIMR contends that if the *Clapper* court was presented with the fact pattern of the present case, the Court would grant standing to the plaintiff. Four justices voted to give standing to plaintiffs in *Clapper*. If the present case was before the Supreme Court it is probable that at least one other justice would favor granting standing to this plaintiff.

36

**Case law referred to by the FDA**

In the motion to dismiss, the FDA referred to *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976), "Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." (ER 51 last¶) The Court was discussing the **redressability** of the injury.

Plaintiffs in *Simon v. Welfare Rights* asked the Internal Revenue Service to modify a regulation. They believed the regulation allowed or "encouraged" non-profit hospitals to deny services to indigent patients. The plaintiffs argued that if hospitals' tax deduction status was threatened they would not deny services to indigents. The Court noted that private philanthropy contributed only 4% of the private hospital's revenue. It was quite likely that even if the IRS changed it regulations, hospitals would continue their present practices. So a favorable ruling from the court would not redress their injuries. In the present case, PIMR and the FDA are in agreement that the injury is redressable by a favorable ruling from the court.

37

### 3.     Redressability

The injury is definitely going to happen again because COPD is a common condition. The FDA did not object to this concern and has therefore conceded the issue. If the court rules against the FDA, the new drug, roflumilast, will be removed from the market and Dr. Desai will not have to spend uncompensated time discussing it.

## The District Court ordered should be reversed

The District Court ruled that there was no injury and if there was it was not fairly traceable to the FDA actions. PIMR contends that there was loss of time, money and credibility, and the injury is fairly traceable to the FDA's action.

The District Court said, "Desai makes no specific statements in his declaration about the amount of time he has spent talking to "several" patients about roflumilast. Nor does he quantify in any way the alleged loss in revenue that has resulted." (ER 5¶1.) Desai said in his affidavit that he lost money (ER 64¶6) but did not specify the amount. This omission is not critical. The question is does an injury exist? Not how large or small it is.

The District Court also dismissed the claim of lack of credibility as speculative. PIMR is at a loss to present evidence of loss of credibility. It is

38

possible to present affidavits from patients saying that they lost faith in their doctors when the doctors contradicted the FDA. Such an affidavit would only raise more questions.

The District Court dismissed the cases of *Glickman* and *Seattle Audubon Society,* by saying, "In each of these cases, the plaintiff had sufficiently alleged that the government's action would adversely affect its protected interest. In contrast, in this action, Plaintiff has not shown a protected interest.." (ER 6 ¶1). PIMR contends that earning a living is a "protected interest." Desai lost time and money and he has a "protected interest" in earning money.

PIMR further contends that loss of time is itself an injury. Time is valuable and can be spend on other activities that are valuable, even if a plaintiff is not making money during that time.

The District Court quoted the Appellate Court decision in *PIMR—I* to rule that the injury, if any, was not traceable to FDA actions.

**The Appellate Court decision in *PIMR—I* was wrong**

The court ruled that Desai's injuries were not "fairly traceable" to the FDA. This was an error because:

- Loss of time is an injury

- The ruling was against the existing case-law

- The Appellate Court failed to see the larger picture

## (a) Loss of time is an injury

Loss of time is an injury even if the loss does not cause any financial harm. A person who is not working because of disability or retirement still values time. If a defendant causes him to waste time it would be considered an injury.

The ruling is incorrect if it says the wasted time did not result in loss of income and therefore no injury. Whether the lost time was compensated or not it was a "waste of time". Dr. Desai could spend that time with his family or in pursuit of a favorite activity. Just like watching birds has an aesthetic value, spending time in your favorite pastime has an intrinsic value.

## (b) The ruling was against existing case-law

The Appellate Court cited *Clapper* as a precedent for their decision that the injuries were not fairly traceable to FDA actions. In *Clapper* the Court outlined five intermediary steps that had to happen, in the future, for the plaintiffs to be injured. *All five steps were essential for the injury*. This was too speculative to give rise to standing. The five steps are listed previously in this brief.

40

The Appellate Court ignored the cases of *Laidlaw*, *NDRC v FDA*, *Glickman* and *US v SCRAP*. It was wrong for the Appellate Court to ignore the fact patterns in the other cases and rely only on one. Even that one case, *Clapper,* is highly supportive of PIMR's position. The Court in *Clapper* made it clear that it was a case involving national security and intelligence gathering, an area where the courts have rarely granted standing to plaintiffs. The injuries were all in going to happen in the future, and only if a long list of conditions were met. There is nothing in *Clapper* that suggests that the Court would have rejected standing to PIMR in this case involving the health and welfare of US citizens where the injuries have already happened and are sure to happen again in future.

Four Supreme Court justices voted to give standing to plaintiffs in *Clapper*. It is our contention that at least one of the other five justices would have voted in favor of the plaintiffs if the subject matter was the health and welfare of citizens and there was evidence of wrong doing by a federal agency. Therefore we believe that *Clapper* is strongly supportive of giving standing to PIMR.

Appellant's Opening Brief

**(c) The Appellate Court in *PIMR—I* failed to see the whole picture**

The concept of standing has to take into account the whole lawsuit which includes the following factors:

- Subject Matter of Litigation

- Congressional Intent

- Need of Judicial Review of Agency Actions

**(1) Subject Matter of Litigation**

The Supreme Court has made it very obvious that the subject matter of a case is very important in determining the injuries necessary to grant standing. The fact that the Supreme Court discusses the subject matter in detail in almost every case on standing is evidence of this.

The Court has said' "But the existence of Art. III injury "often turns on the nature and source of the claim asserted.*" Warth v. Seldin*, 422 U.S., at 500. Neither "palpable injury" nor "causation" is a term of unvarying meaning." *Valley Forge Christian College* 454 U.S. 464 at 491

Moreover the Court has said, "..we have often found a lack of standing in cases in which the Judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs, see, *e.g.*, *Richardson*, *supra*, at 167–170. *Schlesinger*, *supra*, at 209–211,

*Laird* v. *Tatum*, 408 U. S. 1, 11–16 (1972) (Quotations omitted)" *Clapper* 133 S.Ct. 1138 at 1147. A corollary to this statement is that the Court is more lenient in cases not involving intelligence gathering and foreign affairs.

The present case deals with the health and welfare of citizens. This is an area where the courts have shown a willingness to examine in detail any agency actions.

## (2) Congressional Intent

"The Court makes a fundamental mistake when it determines that a plaintiff has failed to satisfy the two-pronged "injury-in-fact" test, or indeed any other test of "standing," without first determining whether the Constitution or a statute defines injury, and creates a cause of action for redress of that injury, …." BRENNAN, J. writing in dissent. *Valley Forge Christian College* 454 U.S. 464 at 492

The Congress outlined a process (21 CFR 10.30) to give citizens a voice in the decision making process involving their health and welfare. The Citizen Petition process also gives citizens a right to have a judicial review of the FDA actions if the petition is denied (21 CFR 10.45).

PIMR contends that the courts give deference to the intent of Congress. When evaluating standing under Article III, the amount of evidence needed, should depend upon whether there was a specific statute

43

relating to the situation. PIMR is not suggesting that Article III does not require injury to the plaintiff. PIMR is only arguing that the degree of injuries should take into account the intent of Congress.

The FDA has a staff of about 15,000 and regulates several hundred thousand products and establishments. The FDA subcommittee on science and technology said, "The FDA cannot fulfill its mission because its scientific workforce does not have sufficient capacity and capability." *FDA Science and Mission at Risk: Report of Subcommittee on Science and Technology*, November 2007. Congress has recognized the fact that on some issues members of public would be more knowledgeable than the FDA staff. The citizen petition process was the result. The whole concept of citizen input is thwarted if the FDA rejects petitions from patients and patient advocates with impunity.

The pharmaceutical industry regularly uses the petition process. When a NDA petition is denied they can and do sue the FDA. There is no problem with standing since their financial interest is at stake. The result is that the FDA pays greater attention to petitions from the industry and less attention to petitions from the public. This is just the opposite of the intent and aim of the petition process.

Appellant's Opening Brief

### (3) Need of Judicial Review of Agency Actions

PIMR contends that if Desai's injuries are not deemed sufficient for standing, no other injuries will suffice. When the FDA approves an unsafe drug no one will be able to get a judicial review of the FDA's actions, no matter how illegal their actions may be.

*Clapper* recognizes the need for judicial review of agency actions. The Court was dealing with an agency involved with national security and intelligence gathering. Even then the Court said in their ruling, "..our holding today by no means insulates §1881a from judicial review." The Court went on to describe other scenarios where plaintiffs would have standing to challenge the agency actions and the legality of §1881a (FISA Amendment Act of 2008). The Court gave a two page description of these other scenarios. See *Clapper* Opinion IV B.

Patients cannot sue the FDA to revoke approval given to an unsafe drug. If a patient is injured he is not going to take the drug in future and therefore he cannot ask for an injunction. The FDA contends, in its motion, that the patient can sue the pharmaceutical company (ER 14 line 14). That still leaves FDA actions without judicial review. One defendant has no legal basis to ask the plaintiff to sue a different defendant, even though there may be several possible defendants in a case.

45

The **FDA has conceded the point that no one can sue the FDA when they approve an unsafe drug**. The FDA has failed to come up with a single scenario where its illegal actions can be challenged in court.

The Appellate Court of Ninth Circuit heard oral arguments in *PMIR—I*, on February 13, 2014. Justice Watford asked this question of the FDA counsel under what circumstances a person can bring a lawsuit against the FDA:

> "Can I ask you a question as a follow up? So who is going to bring up a suit? Somebody has to come in contact with the product and get injured? By that time it seems to me, it is too late."
>
> FDA Counsel, "Well that may be past injury. There may be circumstances depending upon what the facts are. Maybe nobody does. If FDA approves something … if you do not like it, the remedy is do not use it."
>
> http://www.ca9.uscourts.gov/media/view.php?pk_id=0000012351. The audio file was downloaded on April 24, 2015, above conversation took place at 15 minutes and 36 seconds.

"DO NOT USE IT": This is not a satisfactory solution to the problem created when the FDA approves an unsafe drug. Patients are in no position to evaluate the risk/benefit ratio of a new drug. Doctors, themselves, are in no position either. The data about a drug's safety and efficacy stays with the pharmaceutical company. The company provides it to the FDA. The FDA DOES NOT release the data to the public. The pharmaceutical companies

46

are free to sit on the data without ever publishing it. They do publish some of it, the part that is helpful to market their drugs.

The FDA website provides scant data about the drug roflumilast. The results of the clinical trials conducted by the company are considered trade secrets and the FDA refuses to release them. In the absence of such disclosure, doctors must depend upon the FDA scientists to make the correct decision whether a drug has a good benefit/risk ratio.

The need for judicial review of agency action is extremely important where there is **evidence of collusion** between the agency and the industry it is supposed to regulate. The letter from the FDA official denying PIMR's petition offers this evidence of collusion between the FDA and the industry. (ER 74) There are three pieces of evidence that show the collusion:

- Change of indication for use was only cosmetic

- Reports of suicides from drug use were ignored

**(i) Change in Indication of use was only cosmetic**

The FDA approves a new drug for use in a particular disease and under certain circumstances. These written guidelines are called indications for use. Both the FDA scientists and the FDA Scientific Advisory Committee rejected the submitted indication for roflumilast. After

47

considering its risk/benefit ratio, the overwhelming opinion was that the drug was unsafe. The benefit, if any, was small and the side effects were too troubling.

Then the drug company rewrote the indication. There is no public record of what exactly happened. Did the FDA officer advise them to change the wording? The changed indication was not submitted to the FDA scientists or the Advisory Committee. A plain reading of the two versions shows that there was no practical difference, let alone significant difference.

Before the change the indication said, "Maintenance treatment of COPD with chronic bronchitis at risk of exacerbations." After the change the indication said, "Treatment to reduce the risk of COPD exacerbations in severe COPD associated with chronic bronchitis with history of exacerbations." (ER 45 line 23) (ER 81 ¶1)

Since exacerbations are unpredictable, the patient has to take the drug on a preventive daily basis, under both indications. So removing the word "Maintenance" and replacing it with "Treatment to reduce the risk" does not make any difference. The words "bronchitis at risk of exacerbations" and "bronchitis with history of exacerbations" are interchangeable. So the only real difference is the addition of the word "severe" in front of COPD. The FDA needs "substantial evidence" that this

48

change would result in change of opinions by the FDA scientists and/or the Advisory Committee. PIMR contends that the FDA lacked any such evidence and therefore its action of approval of roflumilast was illegal.

### (ii) Report of Suicides in the drug group was ignored

One of the main concerns of the Scientific Advisory Committee was the high number of suicides and suicide attempts in the control group. There were three suicides and two attempted suicides in the 6474 patients who took the drug. There were NO suicides or suicide attempts in the 5491 patients who were given a placebo. (ER 79¶4).

The FDA should have asked its statistician or some outside independent scientists to evaluate the high incidence of suicides in patients taking roflumilast. **The FDA asked the drug company** to analyze the suicide incidents using a system called C-CASA. The system is only as good as the data entered by the drug company. The drug company said there was no problem and the FDA accepted that. The FDA said, "..because the sponsor's C-CASA analysis demonstrated that there was no statistical difference between roflumilast treatment group and placebo group, the review division was satisfied.." (ER 80¶5)

49

C-CASA is a method to accurately classify different levels of suicidal events. It is very useful to compare data from one study to the next since the terms are well defined. C-CASA classifies possibly suicide related behavior into different categories. The four categories relating to suicides are 1) Completed Suicide, 2) Suicidal Attempt, 3) Preparatory Act towards Suicide and 4) Suicidal ideation.

C-CASA allows us to compare number of patients in one category to number of patients in the same category in two different studies or in two different groups in the same study. C-CASA DOES NOT say or imply that you can compare one category (e.g. completed suicide) to a different category (e.g. Suicidal ideation). This is exactly what the drug company did to arrive at the conclusion that there was no statistical difference in suicidal events in the roflumilast group as compared to the placebo group.

These actions of the FDA were unscientific and could not fulfill the requirements of 21 U.S.C. §355(d). If the FDA rejects a drug the FDA may approve it later on. The §355(d) says that the FDA needs "substantial evidence" that the reasons for which the new drug application was rejected are no longer true. In the case of the drug application for roflumilast there was no such evidence.

Appellant's Opening Brief

PIMR contends that these illegal actions of the FDA require that there must be judicial review.

### *PIMR—I* is not a precedent here because the facts are different

PIMR also contends that the facts are sufficiently different that the decision in *PIMR—I* is not applicable here. In the present case Dr. Desai lost time while seeing HMO patients. The reimbursement in HMO patients is not determined by a different federal agency. The rate of payment is set by market forces over which a solo medical practitioner has no control.

The reasoning of the court in *PIMR—I* does not apply here. The court had reasoned that the FDA caused the loss of time but another federal agency sets the reimbursement rates so the FDA was not responsible for the injury to Dr. Desai. This is not true of the HMO patients that Dr. Desai sees.

### Conclusion and Relief Requested

PIMR has shown that the injuries to Dr. Desai were concrete and particularized. Dr, Desai lost time, money and credibility. Even without loss of income, loss of time is an injury by itself. The injuries happened in the past and are sure to happen again in future.

The injuries were fairly traceable to the actions of the FDA. Case-law strongly supports this assertion.

51

The district court erred in its ruling that the injuries were not enough and not traceable to the FDA.

The Appellate Court ruling in *PIMR—I* should be overturned. The case law on "injury fairly-traceable to defendant's action" supports the conclusion that PIMR has standing to seek judicial review of agency actions.

The facts in this case are different from *PIMR—I* in that this plaintiff's alleged injury (HMO patients) was not due to another federal agency.

Loss of time is an injury by itself. This loss of time was directly related to the FDA's actions. This was not a self inflicted injury and there were no third parties involved.

The FDA's actions in this case were particularly illegal. The FDA acting in collusion with the pharmaceutical company approved a drug that is neither safe nor effective. The FDA is putting the interests of the drug company ahead of the safety and welfare of the public.

PIMR pleads to this court to grant standing to PIMR and remand the case to the district court for further proceedings.

52

## Certificate of Compliance

PIMR certifies that the opening brief is proportionately spaced, has a typeface of 14 points or more and contains 11,405 words.

## Oral Arguments

PIMR requests that oral arguments be conducted. This case has nationwide importance and involves health and safety of hundreds of thousands of patients.

## Request for Publication

PIMR requests that if the court rules in favor of appellant that the opinion should be selected for publication.

## Statement of Related Cases

PIMR knows of no related cases pending in the United States Court of Appeal for the Ninth Circuit, Circuit Rule 28-2.6.

Respectfully Submitted,

/S/ Steve Gupta

Attorney for Plaintiff-Appellant
Physicians for Integrity in Medical Research, Inc.

53

## Certificate of Service

The undersigned certifies that all parties in this lawsuit are registered with the CM/ECF system of this court. The service will be completed via the CM/ECF system.

/S/ Steve Gupta

Attorney for Plaintiff
steve@doctorgupta.com
2258 Foothill Blvd. Suite 100
La Canada, CA 91011
Phone: (818) 249-7200
Fax: (818) 249-7210

54