# UNITED STATES COURT OF APPEAL
# FOR THE NINTH CIRCUIT

————————

## No.  14-56907

————————

Physicians for Integrity in Medical Research, Inc.
Plaintiff-Appellant
v.
Margaret Hamburg
Commissioner, Food and Drug Administration
Defendant-Appellee

On Appeal from the Order of
United States District Court for
The Central District of California
Case No. CV 14-755-JAK-(FFMx)
Honorable John A. Kronstadt

————————————————

## Appellant's Reply Brief

————————————————

Steve Gupta
2258 Foothill Blvd. Suite 100
La Canada, CA 91011
Phone (818) 249-7200
Fax (818) 249-7210
Email: steve@doctorgupta.com

Attorney for Plaintiff-Appellant

Table of Contents

Introduction                                                                    1

Arguments                                                                       1

FDA Section A:                                                                  2

FDA sub-section A-1:                                                            3

FDA sub-section A-2:                                                            5

FDA sub-section A-3:                                                            6

FDA sub-section A-4:                                                            6

FDA section B:                                                                  8

FDA Section C-1:                                                               11

FDA Section C-2:                                                               15

The FDA has not contested the following arguments                             17

Standing depends upon the subject matter of the litigation                    17

Congressional Intent                                                          17

Change in Indications was only cosmetic                                        17

The Report of suicides in the drug group was ignored                          18

Loss of time is an injury by itself                                           20

Negligence per se                                                             20

Conclusion                                                                    21

Certificate of Compliance                                                     21

Certificate of Service                                                        21

# TABLE OF AUTHORITIES

## Cases

*Animal Legal Defense Fund, Inc. v. Glickman* 154 F.3d 426 (1998) — 4

*Friends of Earth, Inc. v. Laidlaw Environmental Services (toc), Inc.* 528 U.S. 167 (2000) — 15,16

*Hill Dermaceuticals, Inc. v. FDA,* 709 F.3d 44, 47 (D.C. Cir. 2013) — 12

*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) — 7

*Montana v. United States* 440 U.S. 147 (1979). — 9

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 415 F.3d 1078 (9th Cir. 2005) — 7

*Rempfer v. Sharfstein*, 583 F.3d 860, 865-68 (D.C. Cir. 2009) — 11,12

*Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1320 (D.C. Cir. 1998) — 12

*United States v Mendoza* 464 U.S. 154, 104 S.Ct. 568 (1984). — 9

*Wyeth v Levine, 555 U.S. 555, 581 (2009)* — 11

## Statutes and Regulations

21 U.S.C. §355(d) — 10,14,17,18, 20

## Other

David Willman, *REZULIN: Fast-Track Approval and a Slow Withdrawal*, Los Angeles Times Dec 20, 2000 — 14

## Introduction

Physicians for Integrity in Medical Research, Inc. (PIMR) submits this brief in reply to the Answering Brief filed by the Commissioner of the Food and Drug Administration (FDA).

PIMR agrees with the FDA on the following sections of the FDA's brief.

Statement of Jurisdiction

Statement of the Issue

Statement of the Case

Statement of the Facts

Legal Background

Prior Agency Proceedings

Prior Court Proceedings

Standard of Review

PIMR disagrees with the other sections starting with the Summary of Arguments and Arguments. The FDA has several sub-sections under Arguments. PIMR will reply to each one of them as follows:

## Arguments

**FDA:** "The district court correctly held that plaintiff lacks standing to bring its claim."

**PIMR reply:**

The general description of the applicable law is outlined by the FDA under this heading. PIMR agrees with the FDA's statement of the applicable law.

**FDA Section A:** "Plaintiff cannot establish standing through speculative allegations about answering patient questions, losing credibility or losing patients."

**PIMR reply:**

This heading contains two glaring misstatements, "speculative allegations" and "answering patient questions." *PIMR presented evidence of past injury* as well as a statement that the injury is fairly certain to occur again. The FDA is silent on the issue of past injury claimed by Dr. Desai. PIMR claimed that the doctor had loss of time because he had to explain why roflumilast was neither effective nor safe. *Patients did not have to ask this question*. This discussion was forced upon the doctor because of his fiduciary duty to explain the treatment options to his patients.

**FDA sub-section A-1:** "Time spent answering patient questions does not confer standing."

**PIMR reply:**

The FDA claims that extra time spent by Dr. Desai is discretionary. The FDA says, "Dr. Desai may choose to share specific information and views with the patients in some detail." This is not the case. The doctor has a duty to explain the treatment alternatives to his patients. Since this discussion is long and necessary, the time spent is substantial and is a loss to the doctor.

The FDA further argues that it is only speculation that the injury is going to happen again. Therefore, the FDA argues the court cannot grant an injunctive relief. PIMR contends that the affidavit from Dr. Desai makes it very clear that the injury is almost certain to happen again. The doctor said, "COPD is a common condition... I am sure to get new patients with COPD in future..." **The FDA had an opportunity to present evidence that Dr. Desai's statement is not correct**. The FDA could have deposed the doctor and asked him more detailed questions. The FDA could have submitted affidavits from experts saying that COPD is not a common condition and an internist like Dr. Desai is not likely to encounter more

patients in the future. The conclusory statement by the FDA is without any factual basis.

The FDA also argues, "This theory of standing… would open the floodgates to frivolous litigation." This statement is again without any evidence or factual basis. The legislative and judicial branches of our government are well equipped to handle any such future problems. Any zoo visiting member of the public can sue a government agency if the member is not happy with the living conditions of primates. See *Animal Legal Defense Fund, Inc. v. Glickman* 154 F.3d 426 (1998). Even then there has not been a flood of litigation on this issue.

The FDA further argues that Dr. Desai could claim injury from spending time talking to pharmaceutical representatives and to his patients about other approved drugs. But Dr. Desai claimed injury only from time that is "wasted". Doctors routinely spend time for continuing education. But if the time is spent in a useful manner it cannot be called "wasted" time.

The FDA argues that the injury, if any, is not "fairly traceable" to the FDA because, "… this Court determined in *PIMR I* that "whether he is compensated for time spent counseling patients is a function of the reimbursement schedule for office visits set by other components of the federal government, not by FDA."

PIMR has addressed this issue in its Opening Brief page 41. The court made an error in *PIMR-I* when it absolved all governmental agencies from judicial review because another agency was partially responsible for the injuries.

Moreover the existing case-law does not support the conclusion reached by this court in *PIMR-I*. The Supreme Court has found standing in cases where the connection between the injury and the defendant's action was far more remote than in the present case. Therefore this court should grant standing to the plaintiff. The FDA has not contested any of the case-law on the meaning of "fairly traceable."

**FDA sub-section A-2:** "Loss of credibility does not establish standing."

**PIMR reply:**

The heading is not true. Credibility is an essential component of a medical practice. People do not go to doctors who are not credible. Any loss of credibility is an injury.

Whether there is sufficient evidence to establish a loss of credibility is an issue before this court. In its Opening Brief PIMR mentioned that there is no way to quantify the loss of credibility. Any testimonial from patients

that they do not trust Dr. Desai because of his discussion about roflumilast will raise more questions.

**FDA sub-section A-3:** "Speculation that patients will change doctors does not confer standing"

**PIMR Reply:**

PIMR is at a loss to present concrete evidence that patients are going to change doctors. No one can.

**FDA sub-section A-4:** "Dr. Desai's alleged injuries are not germane to PIMR's interests"

**PIMR Reply:**

PIMR does not understand what the FDA is trying to say. The FDA is confusing the "injury" with the "interest". The law on this issue, as quoted by the FDA, is as follows:

> "For an organization to have standing to bring suit on behalf of its members, it must satisfy three requirements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it

seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

The FDA claims that Dr. Desai's "alleged injuries" are not germane to PIMR's interest. There is no requirement that injury to the plaintiff and the interest of the organization be the same. Dr. Desai's "interest" is to remove roflumilast from the market because it is an unsafe drug and is causing injuries to doctors in the form of wasted time and loss of credibility. The drug is also causing injury to patients. PIMR's purpose is stated in its bylaws: "To be an advocate for patients and public in the field of medical research, and introduction of new drugs and medical devices." The present lawsuit fits squarely with the stated purpose.

The FDA's reliance on *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 415 F.3d 1078 (9th Cir. 2005) is without merit. In *Ranchers Cattlemen* an organization was formed to advance trade and marketing interests. The lawsuit they filed was to advance environmental interests. This was not consistent with the law. This case has

no statement saying that "injury to plaintiff" has to be in line with the "interest of the organization."

**FDA section B:** "This court correctly decided PIMR I which estops plaintiffs arguments"

**PIMR Reply:**

When PIMR said that the issue of Standing is identical in both *PMIR-I* and the present case, PIMR meant that standing is the issue in both cases. PIMR did not concede that the subject matter is same or that the resolution of the issue of standing in *PIMR-I* will be applicable to the present case.

PIMR believes that this case is about a different drug and a different injured party. There are different circumstances under which the drug was approved. The FDA showed gross negligence in approving this drug. There is a danger to the health and welfare of hundreds of thousands of patients. PIMR contends that the issue of standing cannot be resolved without taking into consideration all these factors. Therefore the issue preclusion does not apply.

The FDA contends that the failure of the plaintiff to ask for *en banc* review or file a petition for certiorari means that this case is estopped from proceeding.

There may be several reasons why PIMR did not ask for *en banc* review or file a petition for certiorari in the Supreme Court. PIMR has limited resources and decided to spend these resources on the case against the drug roflumilast. The fact pattern of this case shows clear evidence of collusion between government agency and private industry as well as *negligence per se* by the agency.

The principal of collateral estoppel is different when applied to actions by or against the US government. Because the legal questions may affect thousands of people a "second opinion" is desirable. This was the argument made by the US solicitor general in the case of *United States v Mendoza* 464 U.S. 154, 104 S.Ct. 568 (1984). The Court agreed and noted that, "A rule allowing nonmutual collateral estoppel against the government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue."

"..preclusion may be inappropriate when issues of law arise in successive actions involving unrelated subject matter." *Montana v. United*

*States* 440 U.S. 147 (1979). The subject matter of this lawsuit is a drug. The subject of PIMR-I was a surgical device called Alair®. The injured parties in the two lawsuits are different and Dr. Desai has claimed injury because of lack of compensation from federal programs as well as private payers.

The issue of standing has to take into consideration the underlying fact pattern. There are four major differences between Alair and roflumilast.

- The FDA scientists were neutral on Alair before the Advisory Committee meeting. The FDA scientists had recommended that roflumilast be rejected.

- The Advisory Committee recommended approval of Alair. The Advisory Committee recommended against approval of roflumilast.

- The FDA approved Alair after Committee meeting. The FDA rejected roflumilast after the Committee meeting.

- The FDA changed its decision and approved roflumilast without following the procedure outlined in 21 U.S.C. §355(d).

Therefore the subject matter is different and issue preclusion should not apply.

**FDA Section C-1:** "Judicial review is not appropriate when standing requirements are not met"

**PIMR Reply:**

PIMR never claimed that judicial review is appropriate when standing requirements are not met. PIMR argued that the standing requirements have to take into consideration the necessity of judicial review when

1) the health and welfare of thousands of patients is at stake

2) the FDA overruled scientists and physicians specialists

3) there is evidence of *negligence per se* and

4) there is evidence of collusion between the agency and the industry it is supposed to regulate.

The FDA suggests that the patients bring lawsuits against the pharmaceutical company, citing *Wyeth v Levine, 555 U.S. 555, 581 (2009).* This does not address the issue of judicial review of agency actions.

The FDA presents the case of *Rempfer v. Sharfstein*, 583 F.3d 860, 865-68 (D.C. Cir. 2009) as an example of a situation where the FDA actions were reviewed by a court. However the FDA, the defendant agency, did not argue lack of standing and the district court did not address this issue in

*Rempfer v. Sharfstein.* The FDA admitted as such in its brief on page 24 footnote 7. Therefore this case is not an appropriate example.

Moreover this case is very unusual. The plaintiffs were being forced to receive anthrax vaccine. They had no choice. The FDA argued in *PIMR I* that if a patient does not like a drug, or thinks the drug is not safe, he is free to not take it. (Oral arguments at 15:36). Therefore a patient cannot have standing, according to the FDA, unless he is being forced to take a medicine. This case does not advance the FDA's argument that the FDA is subject to judicial review when it approves an unsafe drug.

The FDA says, "Numerous plaintiffs have sued FDA over drug safety concerns." But the FDA could present only two cases. These are *Hill Dermaceuticals, Inc. v. FDA,* 709 F.3d 44, 47 (D.C. Cir. 2013) and *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1320 (D.C. Cir. 1998). In both of these cases drug companies were suing the FDA to protect their profits. The drug companies did not want competition from generic drugs since they were producing brand name drugs. Patient health and safety was far from the minds of these pharmaceutical companies.

**After numerous attempts the FDA has failed to come up with a single case where a patient or a patient advocacy group has sued the FDA for approving an unsafe drug.**

In the past few years the FDA has approved dozens of unsafe drugs. This is evident from the number of drugs that were recalled after thousands of patients died and numerous others suffered severe adverse effects.

The question is how many people have to commit suicide before this drug is withdrawn from market? If past experience is any guide it may take years before this happens. The FDA approved a new drug called Rezulin in January 1997. The drug was meant for the treatment of diabetes. FDA staff doctor, Dr. John L. Gueriguian, who first reviewed the drug, noted that it caused liver damage in clinical trials and was not very effective in treating diabetes. The drug was not superior to several other drugs, already on market, that did not cause liver damage. He recommended that the drug should be rejected. The FDA inserted a warning about liver damage in the drug label and approved it. Over 90 patients developed liver failure and 63 died within a few months.

A senior FDA epidemiologist, Dr. David J. Graham, warned at a public meeting in March 1999 that Rezulin was one of the **most dangerous drugs** on the market. He said he thought that Rezulin could cause liver failure in 1 in 1,800 patients. He estimated that the FDA was aware of only 10% of deaths and [liver] transplants linked to Rezulin. The FDA finally recalled Rezulin in December 2000.

"Dr. Gueriguian said Rezulin is an example of how senior FDA officials relied on a company's hopes at the expense of public health. "It really doesn't matter if it was incompetence or dishonesty," he said. "The result is the same: People died unnecessarily."" David Willman, *REZULIN: Fast-Track Approval and a Slow Withdrawal*, Los Angeles Times Dec 20, 2000.

The FDA is taking a similar approach for roflumilast. This drug is no more effective than a similar drug called theophylline. Theophylline has been available for several decades and does not cause suicides. The FDA has inserted a suicide warning in the drug label of roflumilast. FDA is relying on voluntary reporting by family and friends of people who commit suicides. In the eighteen month period after the release of the drug the FDA received 31 reports of suicidal behavior that were serious enough to cause either permanent bodily injury and/or admission to a psychiatric facility. If we believe Dr. David J. Graham, senior FDA epidemiologist, it means there were about 310 patients who showed suicidal behavior, attempted suicide or completed suicides. How many were successful in killing themselves is not known to the public, since the FDA did not release that figure.

Judicial review of the FDA's actions is essential to make sure that the drug roflumilast met legal guidelines enumerated under 21 U.S.C. §355.

**FDA Section C-2:** "The case law supports the District Court's determination of no standing."


**PIMR Reply:**

The FDA makes a blanket conclusory statement that in all the cases quoted by PIMR, the plaintiffs had suffered injury and therefore they had standing. The FDA further says, "Every question of standing must be analyzed on the specific claims and factual allegations presented; the scenarios presented in these cases shed no light on plaintiff's claim to standing in this case."

PIMR begs to differ. Even though past cases may be different than the present case, an analysis of the Supreme Court rulings in similar cases sheds light on the degree of injury necessary and the meaning of the words "fairly traceable."

PIMR insists that the case law is relevant to the discussion of standing in the present case. The FDA is reluctant to review case law because it supports standing for PIMR.

The FDA further argues that *Friends of Earth, Inc. v. Laidlaw Environmental Services (toc), Inc.* 528 U.S. 167 (2000), should not be a controlling case in the present lawsuit. The FDA raises two objections.

First, that the citizen petition process giving a plaintiff a right to sue is based upon rules promulgated by the FDA not Congress. Second, the charge of collusion between the pharmaceutical companies and the FDA is "frivolous."

PIMR contends that the FDA promulgated the citizen petition rules under laws made by the Congress. Therefore the situation is very similar to that of *Laidlaw*. The FDA cannot make any rules that are contrary to the intent of Congress.

PIMR has presented credible evidence of collusion between the pharmaceutical company and the FDA. After the FDA's own scientists rejected the drug as neither safe nor effective, the FDA convened an Advisory Committee meeting of outside scientists and physicians specializing in lung diseases. The Advisory Committee also rejected the drug because it was not very effective and there was an increased incidence of suicides. Then the pharmaceutical company made cosmetic changes in the indications (? in consultation with the FDA). The FDA also delegated the task of further statistical analysis of suicides to the same drug company. The FDA has a fully staffed statistics department. This department was not given the raw data to analyze. This evidence of collusion is uncontested.

**The FDA has not contested the following arguments.**

**Standing depends upon the subject matter of the litigation:** PIMR argued that the definition of "injury" and "fairly traceable" are dependent on the subject matter. The FDA did not contest this argument.

**Congressional Intent:** Congress realized the importance of public participation in the matter of numerous products that the FDA regulates. "The FDA cannot fulfill its mission because its scientific workforce does not have sufficient capacity and capability." (Opening Brief page 44). Therefore the public has a right to petition the FDA and a right of judicial review of the FDA's actions.

The FDA did not contest this argument. The FDA said that the plaintiff needs to meet Article III standing requirements. PIMR agrees but wants to emphasize that intent of Congress be taken into consideration when deciding about "injury" and "traceability".

**Change in Indications was only cosmetic:** After the FDA's own scientists rejected the drug, the FDA convened Advisory Committee meeting consisting of outside experts. The committee also rejected the

drug. Then the drug company, in consultation with the FDA, changed the Indications for Use of Drug. This change was purely cosmetic. There was no "substantial evidence" that this change would turn the drug into a safe and effective product.

The FDA now claims that the wordings of Indications include the word "severe COPD". At the time of Advisory Committee meeting the Indication said "COPD." The FDA believes that it narrows the population of patients who would receive the drug. **This is an afterthought**. If we read the rejection letters from the FDA, there is no such reasoning provided (ER pages 74-81 and 88-89).

**The Report of suicides in the drug group was ignored:** This statement stands uncontested by the FDA. There were three suicides and two attempted suicides in the drug group as opposed to none in the placebo group. **On statistical analysis this is highly significant**. The FDA told the drug company to reanalyze it. The drug company juggled with the population of the two groups and promptly removed two suicide cases from the drug group, on flimsy grounds*, and added one patient to the placebo group who had suicidal ideation. So the company says there is really no statistical difference between three occurrences in active drug group and

one in placebo group. The FDA agreed! There is no scientific rationale for comparing "occurrences of serious adverse effect like suicide and suicidal attempts" to "occurrences of not so serious adverse effect of suicidal ideation." The FDA did not question the comparison of two different events in the two groups!

---

⋆[Patient 96102 took nine tablets of roflumilast and started feeling psychiatric symptoms. He stopped taking the medicine. His symptoms continued and he was hospitalized. He attempted suicide but failed on his first attempt. He continued with severe anxiety and committed suicide 20 days after his last dose of roflumilast. Patient 7124 committed suicide after taking the drug for 17 weeks. Company investigator said that if he had taken his tablets of roflumilast regularly every day, then his last dose would have been 20 days before his suicide. There was no way to know for sure. The drug company assumed that he was free of roflumilast for 20 days before his suicide.

The drug company removed these two patients from the analysis. As is very clear from the history, the first patient developed severe psychiatric symptoms within 9 days of starting medicine and the symptoms continued till he committed suicide. There is no rationale for saying that his suicide was not related to the drug. The second patient may have taken his

medicine irregularly, a common occurrence. So it is probable that he was taking the drug when he committed suicide.]

---

**Loss of time is an injury by itself:** PIMR claims that there is no need to show that the loss of time resulted in loss of income. The FDA did not contest this argument.

*Negligence per se*, **the FDA's reversal of its decision to reject roflumilast was contrary to 21 U.S.C. §355(d):** PIMR argued in its opening brief (page 50 last para) that once the FDA rejects a drug it has to follow §355(d) rules before it can approve the drug. Simply stated the §355(d) says that if the FDA has "substantial evidence" it may reverse its ruling if the conditions that caused the ruling [in the first place] are no longer true.

> "...the term "substantial evidence" means evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed.." 21 U.S.C. §355(d)

Minor cosmetic changes in the wording of the Indications for use would not qualify as "substantial changes." There was no evidence of

ubstantial changes when the FDA reversed its decision. The FDA did not contest this argument.

## Conclusion

PIMR requests this court to overturn the ruling of the district court and remand the case to the district court for further proceedings.

## Certificate of Compliance

Pursuant to FRAP (a)(7)(C) and Ninth Circuit Rule 32-1, the undersigned certifies that the reply brief is proportionately spaced, has a typeface of 14 points or more and contains 3950 words.

Respectfully Submitted,

/S/ Steve Gupta
Attorney for Plaintiff-Appellant
Physicians for Integrity in Medical Research, Inc.

## Certificate of Service

The undersigned certifies that all parties in this lawsuit are registered with the CM/ECF system of this court. The service will be completed via the CM/ECF system.

/S/ Steve Gupta